## 20049. COTHREN v. THE STATE.

Per Curiam. Under the counter-showing made by the State, the judge as trior was authorized to find that all the charges of bias and prejudice made against the juror had been refuted; and the refusal to grant the extraordinary motion for a new trial was not error.

Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur. Luke, J., dissents.

Decided December 10, 1929.

A. B. Spence, solicitor-general, contra.

Luke, J., dissenting. In my judgment the majority opinion as to the various charges of improper conduct of the juror E. L. Anderson is correct, with one exception; but I think this exception is cause for the grant of a new trial. On March 5, 1929, T. F. Johnson made substantially the following affidavit: "Deponent was present . . when Seab Cothren was tried and convicted under a whisky charge. Edmund L. Anderson was a juror who served as a juror upon the jury which convicted Seab Cothren. During said term of said court, and prior to the trial of said Seab Cothren, deponent was requested to attend a meeting at the Dixon Hotel in Alma, . . there being present thereat . . Walter Holton, Edmond L. Anderson, juror aforesaid, J. G. Barber, Stephen Aldridge, T. R. Bullard, his honor J. D. Blalock, the then judge of Bacon superior court, Hon. A. B. Spence, solicitor-general, J. R. Johnson, and this deponent, as well as others, . . the matter under discussion at said meeting being the cases against said Seab Cothren . . and the cases against Silas Cothren. The said E. L. Anderson and the said Walter Holton were the principal speakers at said meeting. The said E. L. Anderson, in the course of his discussion of the case against Seab Cothren, then and there did recommend and urge upon the judge, Hon. J. D. Blalock, the severest punishment in connection with both said Seab Cothren and said Silas Cothren when their cases came to be considered." Affidavits of J. R. Johnson and Stephen Aldridge substantially the same as the foregoing affidavit were also offered on the hearing. In rebuttal the State offered the affidavit of the juror J. L. Johnson,

T. R. Bullard, Walter Holton, and J. G. Barber, wherein, after deposing that they were present at said Dixon Hotel, they further deposed as follows: "The purpose of the meeting was to discuss with the judge and the solicitor-general the deplorable conditions of the whisky business in the county of Bacon." "At the same term of court Bill Cothren was up for trial for killing an old man named Madison Holton. The evidence showed that they were both under the influence of whisky at the time of the killing, the Cothren boy being about eighteen years of age, and the deceased being about sixty years of age." "Just prior to court two young boys, one about fifteen or sixteen years old and one between seventeen and nineteen years of age, were caught distilling whisky. Two sixty-gallon stills close together and ten or twelve barrels of buck were at the still. This was shown by evidence at said term of court." "The entire party urged the judge, in the event of conviction, to be more strenuous than the courts had been, because it looked like the young manhood of the county was being destroyed. Small fines apparently had the effect of license. There was no particular one centered out, but it was a general discussion about the general conditions."

In his counter-affidavit, Stephen Aldridge, after averring that he was present at said meeting, "and that the discussion was about the general conditions in the county with reference to whisky, and about some killings that recently occurred, some boys being caught distilling whisky, and such as that," and that the meeting was not for the purpose of discussing any particular individual, further deposed that he heard his former affidavit read on March 6, 1929, and that "it does not speak the truth, nor does it speak what the affiant intended to sign." J. E. Pirkle, who witnessed Aldridge's signature to his said affidavit, deposed that Cothren's attorney, Homer L. Causey, suggested that said affidavit be read over to affiant; that Aldridge said that he already knew what was in the affidavit, and that it spoke the truth; but that Causey insisted that the affidavit be read over to Aldridge, and that this was done; and that Aldridge, after taking the usual oath, signed the affidavit, "stating 'that is what happened,' or words to that effect." According to the showing made by the State, the meeting attended by the presiding judge, the solicitor, and numerous other persons, during the term of court at which the defendant was convicted,

was for the purpose of discussing "the deplorable conditions of the whisky business in Bacon county," to save the young manhood of the county from its direful effects, and to induce the court to inflict severer punishment in such cases. It also appears from the State's showing that "the entire party," including juror E. L. Anderson, who passed upon the case, "urged the judge, in the event of conviction, to be more strenuous than the courts had been, because it looked like the young manhood of the county was being destroyed."

The court as trior had the right to accept the version of the meeting most favorable to the State; but at the same time the state was bound by its own affidavits.

Considering the time, the place, the subject discused, and the part that the juror took in the discussion, I can not escape the conclusion that the juror Anderson was not a proper person to sit on the jury trying the defendant for manufacturing and possessing whisky.

The jury convicted the defendant under both counts of the indictment, and fixed his sentence under the felony charge at not less than two and not more than five years in the penitentiary. I think the defendant should have a new trial.